IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARL JACKSON | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:11-CV-1797-SPM |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Michael J. Astrue, the Commissioner of Social Security, denying the applications of Plaintiff Earl Jackson for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (collectively referred to as the "Act"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 21). Because the Court finds that the Commissioner erred by failing to comply with the relevant legal requirements in his analysis of Plaintiff's substance abuse, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**FACTUAL BACKGROUND**

Plaintiff Earl Jackson was 46 years old at the time of the hearing in this case. (Tr. 37). He is a high school graduate and worked from 1998 through 2008 as a janitor. (Tr. 37-38).

In his applications for disability benefits, Plaintiff claimed that he has been disabled since September 12, 2008, due to severe depression, headaches, memory loss, and confusion. (Tr. 54, 136). Plaintiff's medical records since 2008 reflect a history of significant alcohol abuse, major depressive disorder, depressive type psychosis, anxiety, multiple suicide attempts, suicidal thoughts, self-mutilating behaviors, problems with concentration and cognition, and several in-patient hospitalizations related to alcohol abuse and depression. (Tr. 200-01, 223, 236, 238, 250, 256, 282, 288, 303, 318-21, 370, 360, 364, 405, 447, 454, 462, 486-91, 612, 630-35, 687-91, 731-32, 944-45, 947, 1197).[1]

At the May 5, 2011 hearing, Plaintiff testified that he has been sober since November 2010. (Tr. 39, 41). He stated that he has daily suicidal thoughts, problems concentrating, problems with reading comprehension, problems eating, significant weight loss, sleep problems, and lack of energy. (Tr. 42-46). Plaintiff takes medications for his impairments as prescribed, but he asserts that they do not really help. (Tr. 41).

## PROCEDURAL HISTORY

On June 9, 2010, Plaintiff applied for DIB, and on October 5, 2010, Plaintiff applied for SSI. (Tr. 132-35, 136-39). Those applications were initially denied. (Tr. 54). On October 27, 2010, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 59-60). Plaintiff appeared and testified before ALJ Randolph E. Schum on December 2, 2010, and May 5, 2011. (Tr. 27-34, 35-46). On May 25, 2011, the ALJ issued an unfavorable decision. (Tr. 7-22). On June 15, 2011, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council, but on September 15, 2011, the Appeals Council declined to review the case.

---

[1] This is not intended to be an exhaustive list of the medical records reflecting these conditions.

2

(Tr. 1-3, 5). Thus, the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## STANDARD FOR DETERMINING DISABILITY

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's

impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in substantial gainful activity since September 12, 2008, the alleged disability onset date. At Step Two, the ALJ found that Plaintiff had the following severe impairments: depression, a mood disorder, anxiety (not otherwise specified), and alcohol dependence. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments in the listings.

Prior to Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels. The ALJ found that when Plaintiff abstains from alcohol, he is able to understand, remember, and carry out at least simple instructions and perform non-detailed tasks. The ALJ further found that Plaintiff could perform work at a normal pace without production quotas, should not work in settings that include constant/regular contact with the general public, and should not perform work that includes more than infrequent handling of customer complaints. At Step Four, the ALJ found that Plaintiff could not perform his past relevant work as a custodian. At Step Five, relying on the testimony of a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. The ALJ concluded that Plaintiff had not been under a disability as defined in the Act. He further stated that because Plaintiff had been found not to be disabled, "an examination of whether [Plaintiff's] alcohol abuse is material to a finding of disability is not necessary." (Tr. 12-22).

## STANDARD FOR JUDICIAL REVIEW

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009)). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

## DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff makes several arguments: (1) that the ALJ erred by failing to analyze the effects of Plaintiff's substance abuse under the procedures outlined in 20 C.F.R. § 404.1535, 20 C.F.R. § 416.935, and *Brueggemann v. Barnhart*, 348 F.3d

689 (8th Cir. 2003); (2) that the ALJ improperly discredited the opinion of Plaintiff's treating physician; (3) that the ALJ's RFC findings are not supported by "some" medical evidence; and (4) that the ALJ relied on the vocational expert's answer to a flawed hypothetical question that did not include all of Plaintiff's impairments. Because the Court agrees that the ALJ erred by failing to analyze the effects of Plaintiff's substance abuse under the relevant legal requirements, and because the Court cannot determine that the error was harmless, the Court will reverse and remand, and it need not reach the remaining issues raised by Plaintiff.

### A. PROCEDURES FOR ANALYZING DISABILITY CLAIMS IN WHICH SUBSTANCE USE IS A FACTOR

Under the 1996 amendments to the Social Security Act, an individual is not considered disabled "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003). The claimant bears the burden of proving that alcoholism was not a contributing factor material to the disability determination. *Brueggemann*, 348 F.3d at 693. However, "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and award of benefits must follow." *Id.* "In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant]." *Id.*

In *Brueggemann*, the Eighth Circuit outlined in detail the procedures the ALJ must follow in analyzing alcohol-related disability claims. First, the ALJ must "determine whether [the claimant] is disabled. The ALJ must reach this determination initially . . . using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Id.* at 694. This disability determination must be made

7

"without deductions for the assumed effects of substance disorders." *Id.* The ALJ's inquiry "concerns strictly symptoms, not causes . . . ." *Id.*

If all of the claimant's limitations, "including the effects of substance abuse disorders," show disability, "then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95. "Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Id.* at 695.

"Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.* If the ALJ cannot determine whether the substance use disorders are a material contributing factor, the ALJ must award benefits. *Id. See also Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010) (describing the procedure for assessing the effect of substance use on disability claims).

## B. THE ALJ'S ANALYSIS OF PLAINTIFF'S SUBSTANCE USE

As Defendant admits, the ALJ's analysis was inconsistent with the procedure required by *Brueggemann*, 20 C.F.R. § 404.1535, and 20 C.F.R. § 416.935. *See* Def.'s Br. at 11-12. The ALJ did not conduct the five-step disability determination process based on all of Plaintiff's symptoms "without deductions for the assumed effects of substance disorders." *See Brueggemann*, 348 F.3d at 694. Instead, the ALJ determined Plaintiff's RFC by assessing what he can do "when [he] abstains from alcohol." (Tr. 15-20). The ALJ then found that because Plaintiff was not disabled, "an examination of whether the claimant's alcohol abuse is material to

Plaintiff's disability is not necessary." (Tr. 22). This analysis clearly does not comply with *Brueggemann* or the regulations on which it is based, and thus "the ALJ's decision reflects legal error." *Id.* at 695.

Defendant points out that after the court in *Brueggemann* identified the ALJ's legal error, it went on to consider whether the ALJ's error was harmless. In *Brueggemann*, the court found that the ALJ's error was not harmless, because "the evidence suggesting Brueggemann's disability independent of any alcohol abuse carries multiple indicia of reliability." *Id.* at 695. Specifically, the court noted that (1) reports and notes from Brueggemann's treating physician comported with evidence from another examining physician and matched Brueggemann's own testimony about his symptoms; (2) Brueggemann "required in-patient hospitalization on several occasions when the record indicates his sobriety"; and (3) even after discharge from a four-day hospital stay "during which one assumes hospital staff did not permit Brueggemann any alcohol," Plaintiff's doctor assigned a GAF score of 50,[2] reflecting "serious limitations in the patient's general ability to perform basic tasks of daily life." *Id.* The court concluded that in light of that evidence, it could not determine whether the ALJ would have reached the same conclusion denying benefits had he "followed the proper procedure by giving due weight to the medical evidence without factoring in Brueggemann's alcoholism." *Id.* at 695-96.

---

[2] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness"; it does "not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)*, 32 (4th ed. 1994).

A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV*, at 32.

Defendant argues that the evidence of disability independent of alcohol abuse that was present in *Brueggemann* is not present here, and the ALJ's error in this case was therefore harmless. I disagree.

First, here, as in *Brueggemann*, notes from Plaintiff's treating psychiatrist support the conclusion that Plaintiff would be disabled even absent alcohol abuse. As Defendant and the ALJ acknowledged, the record indicates that Plaintiff was sober from November 2010 through May 2011. *See* Def.'s Br. at 12-13; (Tr. 20, 39, 41). On April 21, 2011, Dr. Habib, a psychiatrist who indicated that he had seen Plaintiff "quarterly," including in March 2011,[3] completed a Mental Residual Functional Capacity Questionnaire for Plaintiff. (Tr. 1197-1202). Dr. Habib assessed depression and assigned Plaintiff a GAF of 50. (Tr. 1197). He stated that Plaintiff "continues to be suicidal" and noted symptoms of anhedonia; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt, flat, or inappropriate affect; impairment in impulse control; pathological dependence, passivity, or aggressivity; difficulty thinking or concentrating; persistent disturbances of mood or affect; substance dependence; emotional withdrawal or isolation; emotional lability; deeply ingrained, maladaptive patterns of behavior; easy distractibility; memory impairment; and sleep disturbance. (Tr. 1197-98, 1201). He further noted that Plaintiff was easily distracted, had poor attention to detail, needed lots of support, could not carry out simple tasks without help from his wife, isolated himself from others, and had a dull, flat affect not conducive to a work setting. (Tr. 1199). Dr. Habib opined

---

[3] The record is somewhat unclear concerning the specific dates on which Dr. Habib saw Plaintiff and which specific treatment records were authored by Dr. Habib. However, the undersigned notes that at least the following records appear, based on signatures, to be those of Dr. Habib: a psychiatric evaluation dated May 13, 2010 (Tr. 453-55), a psychiatry progress note dated June 10, 2010 (Tr. 447), and a physician progress note dated March 17, 2011 (Tr. 1195).

that Plaintiff would be unable to meet competitive standards or would have no useful ability to function in many mental abilities and aptitudes needed for unskilled work. (Tr. 1197-1202).

The symptoms described by Dr. Habib are largely consistent with Plaintiff's own testimony regarding his symptoms. (Tr. 42-46). Although the ALJ offered some good reasons for giving less than controlling weight to Dr. Habib's opinion, (Tr. 18-19), Dr. Habib's opinion still provides some evidence that Plaintiff had significant mental limitations even when he was not using alcohol.

Second, as in *Brueggemann*, there is evidence that Plaintiff required hospitalization and had significant psychiatric symptoms even during his period of sobriety. Although Plaintiff stopped drinking in November 2010, he was hospitalized from December 9, 2010 through December 17, 2010 for depression. (Tr. 639, 644). He reported suicidal ideation, increasing depression, decreased energy and concentration, feelings of hopelessness and helplessness, and disrupted sleep. (Tr. 630). It was noted that his insight and judgment were poor, that he mainly secluded himself in his room, and that he had vague homicidal ideations at one point. (Tr. 632, 634-35). At discharge, he was diagnosed with alcohol dependence and major depressive disorder, recurrent, severe, and his GAF score was 50. (Tr. 630). It was noted that at discharge, he still endorsed vague suicidal and homicidal ideations and reported feeling depressed. (Tr. 634-35). Moreover, during a March 17, 2011 clinic visit, it was noted that although Plaintiff had not had alcohol since November, Plaintiff had limited insight and judgment. Notes from that visit also indicate that there may have been a period of hospitalization in January 2011. (Tr. 1195).

11

Third, as in *Brueggemann*, there is evidence that doctors assigned Plaintiff GAF scores of 50 (or lower) at discharge after multiple days of hospitalization—periods "during which one assumes that Plaintiff was not permitted any alcohol." *See Brueggemann*, 348 F.3d at 695. On April 30, 2010, at the end of a five-day hospital stay, Plaintiff's GAF was 41-45. (Tr. 255-56). On May 6, 2010, at the end of a five-day hospital stay, Plaintiff's GAF was 45-50. (Tr. 245-46). On September 24, 2010, at the end of a thirteen-day hospital stay, Plaintiff's GAF score was 46-50. (Tr. 948-49). On December 17, 2010, at the end of an eight-day inpatient hospitalization and three weeks after he stopped drinking, Plaintiff was assigned a GAF of 50. (Tr. 630-31). These GAF scores indicate that even after periods of not drinking, Plaintiff had "serious symptoms" or "serious impairment[s]." *See DSM-IV*, at 32.

In light of the above evidence and the guidance given by the Eighth Circuit in *Brueggemann*, this Court cannot determine whether the ALJ would have come to the same conclusions regarding Plaintiff's disability had he "followed the proper procedure by giving due weight to the medical evidence without factoring in [the plaintiff's] alcoholism." 348 F.3d at 695-96. *See also Thompson v. Astrue*, 764 F. Supp. 2d 1132, 1147-48 (D. Minn. 2011) (reversing and remanding in part because the ALJ did not adhere to the procedural framework outlined in *Brueggemann*). Thus, the Court finds the ALJ's legal error was not harmless, and it reverses and remands the case to the Commissioner for further proceedings consistent with this opinion. Because the ALJ will need to re-assess all of the evidence on remand, the Court need not address Plaintiff's remaining arguments.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and this matter is **REMANDED** for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2013.